# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

**MARFORK COAL COMPANY, INC.,**

    **Plaintiff,**

**v.**                                        **Civil Action No.: 5:11-0677**

**CATHERINE ANN MACDOUGAL, *et al*.**

    **Defendants.**

### PLAINTIFF MARFORK COAL COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendants have served 43 interrogatories on plaintiff Marfork Coal Company, Inc. ("Marfork"), which exceeds the 25-interrogatory limit set forth in Rule 33(a) of the Federal Rules of Civil Procedure. In their first set of discovery, Defendant MacDougal propounded 13 interrogatories on Marfork. Defendants Kolins and Schewel now attempt to skirt the 25-interrogatory limit by serving 30 additional interrogatories on Marfork, in violation of Rule 33(a), in "Defendant Elias Schewel's First Set of Interrogatories and Requests For Production of Documents to Defendant [Sic] Marfork Coal Company" (Ex. A)[1] and "Defendant Rebecca Kolins' First Set of Interrogatories and Requests For Production of Documents to Defendant [Sic] Marfork Coal Company" (Ex. B) (collectively, "Defendants' Second Sets of Discovery"). For purposes of Rule 33(a), Defendants are not considered to be separate parties because they share the same interest and the same counsel. Being the equivalent of one party, Defendants are limited to serving a total of 25 interrogatories on Marfork. Because Defendants have exceeded this limit, Marfork is not required to respond to the additional interrogatories.

Marfork also seeks further protection from responding to Defendants' Second Sets of Discovery. Those requests either seek duplicative discovery to which Marfork responded

---

[1] The exhibits referenced in this memorandum are attached to Marfork's Motion for Protective Order.

months ago and/or seek to harass Marfork by requesting information and documents that are wholly irrelevant to this case and propounded only to publicize Defendants' personal agendas. Marfork asked for the withdrawal of these discovery requests, but Defendants refused. Marfork's Motion for Protective Order should be granted, and Marfork should be awarded its attorneys' fees and reasonable expenses.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.  Defendants' Unlawful Trespass on Marfork's Private Property.

On or about July 20, 2011, Defendants banded together to trespass onto Marfork's Beetree Surface Mine property. Marfork has legal rights to possess and use the property, and it conducts coal mining operations thereon. To prevent injury to the trespassing Defendants and Marfork's employees and contract personnel, coal production activities in the immediate area ceased and had to be relocated. Two of the Defendants, Walk and Schewel, were arrested and escorted from the property by the state police. The other two Defendants, Kolins and MacDougal, climbed trees to evade arrest. Eventually, they too were arrested and escorted from the property, but not until MacDougal had squatted for 30 days. This trespass, and the underlying conspiracy to trespass, caused Marfork to suffer damages and irreparable harm. To recoup its losses and prevent future trespasses, Marfork filed this instant lawsuit.[2]

### B.  Defendants' Discovery Requests.

On November 9, 2011, Defendants served their first set of discovery on Marfork which included 13 interrogatories. (Ex. C). Although a couple of those interrogatories were Defendant specific (e.g., What damages did Defendant MacDougal cause Marfork?), all of those interrogatories related equally to all Defendants, and Marfork timely responded on December 12,

---

[2] Defendants removed the action to this Court, with no basis for doing so. (Doc. 1). Marfork timely filed a Motion to Remand, and Defendants did not file a timely response. (Doc. 6). The Motion to Remand is still pending.

2011, with respect to all Defendants. (Doc. 20). On January 30, 2012, Defendants' Second Sets of Discovery were served on Marfork. (Exs. A & B). They included 30 additional interrogatories, again all related equally to all Defendants, and those requests were objectionable for other reasons as well. On March 5, 2012, Marfork served objections to Defendants' Second Sets of Discovery so that there could be no argument that Marfork has waived any objections, and Marfork's objections raise additional issues not covered in its Motion for Protective Order. (Doc Nos. 39 and 40).

**C.     Meet and Confer Regarding Defendants' Second Sets of Discovery.**

On February 20, 2012, Marfork asked Defendants to withdraw Defendants' Second Sets of Discovery. (Ex. D). On February 24, 2012, Defendants refused to withdraw those discovery requests, demanded that Marfork respond or they would seek sanctions, and asked for a meet and confer. (Ex. E). On March 1, 2012, the parties held the meet and confer conference, but these matters remain unresolved. Pursuant to Rule 26(c)(1) and Local Rule 37.1, Marfork certifies that its counsel attempted, in good faith, to resolve this discovery dispute without court action.

## II.     ARGUMENT

**A.     Standard of Review for a Motion for Protective Order.**

Under Rule 26(c), a court may issue a protective order for good cause shown "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W. Va. 2007). "In determining whether good cause exists to issue a protective order prohibiting the dissemination of documents or other materials obtained in discovery, the movant must make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Geisner v. Simplicity, Inc.*, No. 5:10-CV-21, 2011 WL 128776, at *2 (N.D.W. Va. Jan. 12, 2011) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)). Here, good cause exists

because Defendants have served an excessive number of interrogatories and further have served requests that are duplicative and/or irrelevant, with the purpose to harass Marfork in pursuit of their personal agendas.

**B.    Defendants Have Exceeded the Number of Interrogatories Allowed Under Rule 33.**

Including Defendants' Second Sets of Discovery, Defendants have served 43 interrogatories on Marfork.  Rule 33(a) permits a party to serve up to 25 interrogatories on another party.  Defendants, mistakenly, believe they are entitled to serve up to 100 interrogatories on Marfork (i.e., 25 per Defendant).  Given the circumstances of the instant case, however, Defendants are considered to be one party for purposes of Rule 33(a) and, thus, are limited to 25 interrogatories.  Because Defendants have exceeded this limit, Marfork properly seeks relief from having to respond to the interrogatories contained in Defendants' Second Sets of Discovery.  *See Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has been propounded should object to all interrogatories or file a motion for protective order.").

Collectively, Defendants trespassed (and conspired to trespass) on Marfork's private property.  Their conduct was identical; their liability is identical; their interest is identical; and they are represented by the same counsel.  Accordingly, they are to be considered a single party for purposes of Rule 33(a).  In *Gucci America, Inc. v. Exclusive Imports International*, a case with one plaintiff and six defendants, the court expressly rejected the defendants' argument that they were each entitled to serve 25 interrogatories on the plaintiff (for a total of 150 interrogatories).  No. 99 Civ. 11490 RCC FM, 2002 WL 1870293, *5 (S.D.N.Y. Aug. 13, 2002). The court held that, where "the parties are acting in unison and are represented by the same counsel, they may be treated as one party for purposes of the interrogatory limits."  *Id*.

Furthermore, nothing in the Rules allowed the defendants to serve additional interrogatories simply because the plaintiff had already answered 45 interrogatories (which is not the case here). *Id.*

Compared to what Defendants have tried to do in the instant case, the *Gucci* court's approach has been described as the "more sensible approach." *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006). In *Zito*, the court skipped over a literal interpretation of Rule 33(a), which would have allowed the plaintiffs "to propound more than 5,000 interrogatories," in favor of the reasoned analysis of several respected legal commentators:

> "The limitation on number of depositions . . . speaks in terms of 'sides' rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? ***The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation***."

*Id.* (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* vol. 8A, § 2168.1 at 261 (2d ed. 1994)) (emphasis added).

In the instant case, Defendants trespassed (and conspired to trespass) with the common goal of interfering with Marfork's mining operations. Defendants are represented, collectively, by the same counsel, and all of their discovery requests apply equally to all of them. In fact, Defendants would be hard pressed to come up with an intelligible interrogatory request that would be specific to only one of them. Further, by way of their combined responses to Marfork's discovery requests, Defendants have indicated that they consider themselves the

equivalent of one party.[3]  They cannot now avoid the 25 interrogatory limit to harass Marfork by serving 25 interrogatories each.  Thus, the "best result" here—indeed, the only rational result—is to recognize that Defendants are essentially "one party" for purposes of Rule 33(a).[4]  *See, e.g., Vinton v. Adam Aircraft Indus., Inc.,* 232 F.R.D. 650, 664 (D. Colo. 2005) (upholding decision to limit the number of interrogatories by side, instead of by party, based on finding that defendants were nominally separate parties); *EEOC v. Beauty Enterprises, Inc.,* 2008 WL 3359252, *2 (D. Conn. Aug. 8, 2008) (noting that, although plaintiff could *theoretically* serve a total of 100 interrogatories under Rule 33(a), "in practice that may prove to be unduly burdensome").

Furthermore, at some point, reason and logic need to enter the picture.  Defendants seek to serve 100 interrogatories, relevant or not (primarily not), in a simple case of trespass (and conspiracy to trespass), in which they have no defense.  There is not much that Defendants need to discover, particularly if their requests were focused on issues relevant to the case.

Rule 33, like every other rule, must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1. Serving an excessive number of interrogatories on Marfork could hardly be characterized as "just, speedy, and inexpensive."  Moreover, the "purpose of the limit on interrogatories is not to prevent discovery but to prevent potentially excessive use of this particular discovery device." *Estate of Manship v. United States,* 232 F.R.D. 552, 554 n.1 (M.D. La. 2005).

Looking no further than the plain language of Rule 33, Defendants follow the same argument that was expressly rejected in *Gucci*.  They committed their tortious acts in concert and

---

[3] Although most, if not all, of Marfork's discovery requests seek information particular to each defendant (e.g., What information and documents does that Defendant  have on a given subject?), the result or logic is not the same as each individual defendant propounding 25 separate interrogatories that, in essence, are common to all of them.
[4] Moreover, a review of all 43 interrogatories served by Defendants shows that they do not consider themselves to be separate parties.  Their interrogatories relate to collective issues.  In other words, the interrogatories are not, in any way, unique to the individual Defendants.  Indeed, one need only look to Defendants' responses to Marfork's discovery requests to see that Defendants believe that they are not separate parties.

are represented by the same counsel, which makes them "nominally separate" parties. As such, they are allotted a total of 25 interrogatories, a number they have far exceeded. Marfork should be protected from responding to the interrogatories in Defendants' Second Set of Discovery.

**C.    Defendants' Second Sets of Discovery Contain Improper and Duplicative Requests.**

> **1.    Request for production numbers 1 – 14 served by Schewel are impossible to answer as they only refer to the improper interrogatories.**

As a practical matter, Marfork cannot provide any substantive responses to request for production numbers 1 – 14 served by Defendant Schewel because there will be no ANSWERS to the corresponding interrogatories. (Ex. A) (e.g., "Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 1 above.") Responses to those requests would violate the Rules. Even these Defendants could not want Marfork to have to respond to requests that would require it to ANSWER interrogatories that violate the Rules.

Moreover, since Marfork cannot ANSWER the interrogatories because they exceed the number allowed by the Rules, responding to those requests for production would be impossible. *Allahverdi v. Regents of the Univ. of New Mexico*, 228 F.R.D. at 698 ("The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."). Yet Defendants refused to withdraw, amend, revise, or tweak any of the requests contained in Defendants' Second Sets of Discovery, despite the fact that Marfork explained all of this to them. Accordingly, Marfork should not have to respond to request for production numbers 1 – 14 contained in Defendants' Second Set of Discovery served by Defendant Schewel. *Id.*

> **2.    Interrogatory numbers 2, 7, 9-15 and request for production numbers 1 – 10 served by Kolins are duplicative.**

The harassing nature of Defendants' Second Sets of Discovery is further apparent in that 19 of the 33 requests served by Defendant Kolins – 19 - are duplicative of requests previously served by Defendants. Indeed, despite having already received responses to interrogatory numbers 2, 7, 9-13 and request for production numbers 1 - 10 contained in the first set of discovery served by Defendant MacDougal, Defendants seek to harass Marfork by serving those exact requests again, this time under the guise of Defendant Kolins.

Interrogatory numbers 2, 7, 9-15 (interrogatory 14 is duplicative of interrogatory 12 and interrogatory 15 is duplicative of interrogatories 12 and 14) and request for production numbers 1-10 served by Defendant Kolins are **– verbatim –** the same as interrogatory numbers 2, 7, 9-13 and request for production numbers 1-10 contained in the first set of discovery served by Defendant MacDougal. (Compare Exs. B & C). Marfork fully responded to Defendants' first set of discovery on December 12, 2011, and, as set forth therein, that response applied to all Defendants, particularly in light of the fact that Defendants are joint tort-feasors. (Doc. 20). Rule 26(b)(2)(c)(i) allows for protections against "discovery sought [that] is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(c)(i). Accordingly, a protective order should be granted to prevent Marfork from having to respond – again – to interrogatory numbers 2, 7, 9-15 and requests for production numbers 1 – 10 contained in Defendants' Second Set of Discovery served by Defendant Kolins. *Calkins v. Pacel Corp.*, No. 3:07cv00025, 2008 WL 2844695 (W.D. Va. July 22, 2008) (a protective order is justified when discovery is duplicative); *Cf. White v. Witt*, No. C05-695JLR, 2006 WL 3337365, *3 (W.D. Wash. Nov. 16, 2006) (sanctioning counsel during the discovery phase in which he "knowingly and recklessly multiplied the proceedings").

**D.     Defendants' Second Sets of Discovery Contain Harassing Requests That Are Wholly Irrelevant to The Subject Matter of This Simple Case.**

Good cause is shown and a protective order is a proper form of relief when a party's discovery requests "'could not possibly have been designed to lead to the discovery of admissible evidence' and it['s] . . . 'motives were to attack . . . [the opposing party] for what it stands for.'" *Zimmerman v. Bishop Estate*, 25 F. 3d 784, 789 (9th Cir. 1994) (quoting *Townsend v. Holman Consulting Corp.*, 929 F. 2d 1358, 1362 (9th Cir. 1990)). "If this showing is made, the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." *In re Wilson*, 149 F. 3d 249, 252 (4th Cir. 1998) (citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* vol. 8A, § 2043 at 559 (2d ed. 1994)).

More than half of the requests contained in Defendants' Second Sets of Discovery are wholly irrelevant to the trespass and related conspiracy claims. Those requests harass Marfork by seeking: (1) responses regarding Marfork's corporate status (of which Defendants have no good faith basis to question); (2) responses regarding Defendants' "affirmative defenses," which they have previously acknowledged are not relevant; (3) responses regarding their bald assertion that their trespass on Marfork's private property was protected by the First Amendment; and/or (4) responses regarding their bald assertion that the *Noerr-Pennington* doctrine (i.e., they were "petitioning the government") protects their trespass on Marfork's private property.

Through these objectionable requests, it is quite clear that Defendants are not interested in litigating matters relevant to Marfork's trespass and conspiracy claims, but are only interested in publicizing their personal agendas. As such, a protective order is needed to shield Marfork from having to respond to the irrelevant, harassing, and vexing requests contained in Defendants' Second Sets of Discovery Requests.

**1. Interrogatory numbers 9-12, 14-16 and request for production numbers 5 - 12 served by Kolins seek information about Marfork's corporate status.**

Despite clear evidence from the West Virginia Secretary of State, Defendants continue to harass Marfork with an additional 15 discovery requests - 15 - related to Marfork's status as a West Virginia corporation. Indeed, interrogatory numbers 9-12, 14-16 and request for production numbers 5 - 12 contained in Defendants' Second Set of Discovery served by Defendant Kolins continue to waste Marfork's time and resources, and now requires the same of this Court, as they all relate to the indisputable fact that Marfork is a West Virginia corporation.

**INTERROGATORY NO. 9:** List and fully describe where the paychecks for employees of Marfork Coal and/or Alpha Natural Resources employed at the Beetree Mine are issued and in the name of what entity.

**INTERROGATORY NO. 10:** List and fully describe all offices maintained and utilized by Marfork Coal anywhere in the country, the owner of said offices, who works there, and the decisions made at said offices.

**INTERROGATORY NO. 11:** List and fully describe all managers, officers, and board members of Marfork Coal, their mailing addresses, actual place of business, and the roles they perform.

**INTERROGATORY NO. 12:** List and fully describe all activities of Marfork Coal that are in any way independent of Alpha Natural Resources.

**INTERROGATORY NO. 14:** List and fully describe all decisions that Marfork Coal Company has made since their purchase by Alpha Natural Resources independently of Alpha.

**INTERROGATORY NO. 15:** List and fully describe all decisions that Marfork Coal Company is authorized to make independently of Alpha Natural Resources since their purchase by Alpha Natural Resources.

**INTERROGATORY NO. 16:** List and fully describe all time (to the hour) that any and all officers of the Marfork Coal Company have actually spend in any office maintained by the Marfork Coal Company in West Virginia.

**REQUEST NO. 5:** Produce current paystubs, and or copies of paychecks for employees of Marfork Coal at the time of the incident to verify the location from which said paychecks are issued.

**REQUEST NO. 6:** Produce all CURRENT written contracts relating in any way to office space owned, leased, or utilized by Plaintiff Marfork Coal in West Virginia.

**REQUEST NO. 7:** Produce a copy of all Minutes of all Board Meetings held by Plaintiff Marfork Coal in 2011.

**REQUEST NO. 8:** Produce copies of all quarterly and/or annual reports produced by Plaintiff Marfork Coal in 2011.

**REQUEST NO. 9:** Produce copies of all 2011 legal identify reports filed with MSHA .

**REQUEST NO. 10:** Produce copies of all citations and all orders issued by MSHA to Alpha and/or any of its subsidiaries concerning any mine in the State of West Virginia since August 28, 2006.

**REQUEST NO. 11:** Produce copies of all mileage vouchers, airline tickets, and other indicia of travel that verifies that officers of Marfork have actually spend time in any office maintained by Marfork Coal in West Virginia since June 1, 2011.

**REQUEST NO. 12:** Produce copies of all minutes of all meetings that demonstrate that Marfork retains a corporate nerve center in West Virginia.

(Ex. B).

The purpose of these requests can only be explained as a last ditch attempt to justify Defendants' removal of this case to federal court. Yet, no further discovery is needed to establish that Marfork is a West Virginia corporation and that Defendants' removal was inappropriate. Defendants are well aware that Marfork is a West Virginia corporation. In fact, printouts from the West Virginia Secretary of State's website were attached to Defendants' yet-to-be-filed "Response in Opposition to Remand" (Doc. 15-2 at pp. 2-6), unequivocally prove that Marfork is a West Virginia corporation and that there is no diversity jurisdiction upon which to justify their improper removal in the first place.[5]

Those official printouts, relied on by Defendants in this very case, prove that there is no genuine dispute that Marfork is a West Virginia corporation. *Vinson v. Cannon*, No. 2:10-3214-HFF-BHH, 2011 WL 1624962, at n.7 (D.S.C. March 28, 2011) ("The Court takes judicial notice

---

[5] "Where important facts are easily ascertainable and where telephone calls and correspondence would lead a prudent person to further inquiry before resorting to legal process, the lawyer who simply files suit and waits for the facts to sort themselves out surely will be exposed to CR 11 [Rule 11] sanctions if it turns out that no facts support the case." *Babcock v. St. Joseph's Hosp.*, No. 58778-1-I, 2007 WL 4157786, *3 (Wash. Ct. App. Nov. 26, 2007). Not only that, Defendants had this information *before* they removed the case, and they removed it anyway.

of the factual information concerning . . . corporate status that is posted on the official website of the Secretary of State. . . ."); *In re Brackett*, No. 09-00098, 2010 WL 1254705, at * 2 (N.D.W. Va. March 25, 2010) ("Information generated through a government agency's website falls within Fed. R. Evid. 201(b)(2), and courts have routinely considered such information to be self-authenticating for purposes of Rule 902(5)."); *Williams v. Long*, 585 F. Supp. 2d 679, 686–88 (D. Md. 2008) (records from government websites are self-authenticating). Thus, there is no way that Defendants can establish that there was diversity jurisdiction when Marfork filed its Verified Complaint or when Defendants' improperly removed the case to this Court. *Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.,* 102 F. Supp. 2d 673, 675 (S.D.W. Va. 2000) (quoting 28 U.S.C. § 1332(c)(1)) (emphasis added) ("In "determining whether a federal court possesses subject matter jurisdiction based on diversity of citizenship, a corporation is '*deemed to be a citizen of any State by which it has been incorporated* and of the State where it has its principal place of business.'").

Moreover, even if this Court were to substitute Alpha Natural Resources, Inc. as a party in place of Marfork (and it should not, as there is no support in law or fact for such a substitution), Defendants' removal was still improper. Defendant Walk is a citizen of West Virginia. That was admitted in Defendants' Answer to the Verified Complaint and was clearly within Defendants' knowledge when the case was removed. The removal statute and controlling case law make clear that a case cannot be removed to federal court if one of the defendants is a citizen of the forum state. *See* 28 U.S.C. § 1441(b) (emphasis added) ("**Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.**"); *Mancor Industries, Inc. v. Tri-Cities Power Authority*, No. 5:08-cv-00278, 2008 WL 5068582 (S.D.W. Va. Nov. 24, 2008).

We summarize all of this here because there is no other possible explanation for these discovery requests. Defendants are desperately afraid this case will be remanded, perhaps because they are concerned about trying their case in state court or maybe because their removal will be found sanctionable. A protective order should be granted saving Marfork from having to respond to interrogatory numbers 9-12, 14-16 and request for production numbers 5 - 12 contained in Defendants' Second Set of Discovery served by Defendant Kolins.

### 2. Interrogatory numbers 1, 3-6, 8, 13 and request for production numbers 13-17 served by Kolins relate to defenses which have no basis in law or fact.

Further ignoring the relevant facts and issues in this case (whether Defendants trespassed and conspired to trespass on private property), interrogatory numbers 1, 3-6, 8, 13 and request for production numbers 13-17 contained in Defendants' Second Set of Discovery served by Defendant Kolins also continue to harass Marfork by seeking discovery about global climate change (and other such amorphous concepts). Protection is needed from this Court, as those requests only could relate to Defendants' inapplicable and wholly unsupported by law or fact "affirmative defenses" (i.e., personal agendas) that mountaintop removal (generally, but particularly Marfork's Beetree Surface Mine) is "directly threaten[ing] the survival of humanity" through negative global climate change and that Marfork has "unclean hands" because Marfork did not stop mining when Defendants asked it to stop mining.

> **INTERROGATORY NO. 1:** List and fully describe all proof and evidence that Mountaintop Removal Coal Mining does not contribute to global climate change.
>
> **INTERROGATORY NO. 3:** List and fully describe all evidence and/or proof that Plaintiff(s) Has/have that global climate change is not actually occurring.
>
> **INTERROGATORY NO. 4:** List and fully describe all evidence or proof that and/or proof that Plaintiff(s) has/have that the burning of Plaintiff's coal has not and does not contribute to global climate change.

**INTERROGATORY NO. 5:** List and fully describe all evidence and/or proof that Plaintiff(s) has/have that its Mountaintop Removal Coal Mining has not harmed the health of the residents of adjacent and/or surrounding areas to its mines.

**INTERROGATORY NO. 6:** List and fully describe all evidence and/or proof that Plaintiff(s) has/have that its Mountaintop Removal Coal Mining has not harmed the environment/ecosystem of adjacent and/or surrounding areas to its mines.

**INTERROGATORY NO. 8:** List and fully describe all evidence and/or proof that Plaintiff(s) possess(es) that no negotiations have been taking place between RAMPS and Alpha Natural Resources concerning Coal River Mountain, Blair Mountain and/or Mountaintop Removal.

**INTERROGATORY NO. 13:** List and fully describe all negotiations that have taken place between Alpha Natural resources, and/or any subsidiary, sub-entity, division of and/or any other wholly or partially owned entity thereof and any environmental group, and/or other public or private concerning preservation, cessation of mining, wind farms, or any other issue at or near the Beetree Mine and/or Coal River Mountain and the status of said negotiations.

**REQUEST NO. 13:** Provide copies of all documents of any kind that provide any evidence or proof that Mountaintop Removal Coal Mining does not contribute to global climate change.

**REQUEST NO. 14:** Provide copies of all documents of any kind that provide any evidence or proof that global climate change does not exist or is not occurring.

**REQUEST NO. 15:** Provide copies of all documents of any kind that provide any evidence or proof that that the burning of Plaintiff's coal has not and does not contribute to global climate change.

**REQUEST NO. 16:** Provide copies of all documents of any kind that provide any evidence or proof that Mountaintop Removal Coal Mining has not harmed the health of the residents of adjacent and/or surrounding areas to its mines.

**REQUEST NO. 17:** Provide copies of all documents of any kind that provide any evidence or proof that Mountaintop Removal Coal Mining has not harmed the environment/ecosystem of adjacent and/or surrounding areas to its mines.

(Ex. B).

These requests seek responses regarding "affirmative defenses" which are not relevant (legally or factually) to the trespass and conspiracy claims contained in the Verified Complaint and/or do not exist under West Virginia law. In Defendants' "preliminary objections" and "supplemental preliminary objections" to Marfork's discovery requests, Defendants objected to

providing documents regarding the factual bases for these "affirmative defenses" on the grounds that those discovery requests "demand[] information of no possible relevance to this action and [are] not likely to lead to discoverable evidence." (Exs. F & G). Marfork wholeheartedly agrees that all of these "affirmative defenses" have no relevance whatsoever to any issue in this case, and Defendants should not be allowed to shield themselves from discovery and then seek the same discovery from Marfork. *Carter v. City of Bluefield*, 132 W. Va. 881, 889, 54 S.E. 2d 747, 757 (W. Va. 1949) ("Parties will not be permitted to assume inconsistent positions . . .with reference to the same fact or state of facts.") (citations omitted); Syl. pt. 2, *Keller v. Norfolk & W. RY. Co.*, 113 W. Va. 286, 167 S.E. 448 (W. Va. 1933) ("[A] judicial admission is conclusive against the party theretofore making it, unless leave of the court is obtained to withdraw it."); *C.f.*, *Tenneco Chemicals, Inc. v. William T. Burnett & Co., Inc.*, 691 F. 2d 658, 665 (4th Cir. 1983) ("[T]he linchpin to application of judicial estoppel . . . is whether the appellant intentionally misled . . . to gain unfair advantage.").

Moreover, to the extent these requests relate somehow to one of Defendants' numerous "affirmative defenses," Defendants bear the burden of proof, not Marfork. *U.S. v. Mooney*, 497 F. 3d 397, 406 (4th Cir. 2007) (necessity). And, indeed, if one were able to determine that these requests might relate to one of these "affirmative defenses," it is one not recognized under West Virginia law. "[T]hreaten[ing] the survival of humanity" does not appear anywhere in the West Virginia law books. And, the equitable doctrine of "unclean hands" does not, and cannot, apply in the instant case. The "unclean hands" doctrine applies "where the plaintiff has participated 'in some of the same sort of wrongdoing' as the defendant." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968)). No reasonable interpretation of the law would ever allow a doctrine of unclean hands to be applicable when the only evidence in the case of "bad faith negotiations" is that Defendants

requested that Marfork stop mining and Marfork did not stop or when there is simply no relationship between the trespass and any such negotiations.

Marfork is entitled to protection from these requests; they "'could not possibly have been designed to lead to the discovery of admissible evidence' and . . . [Defendants'] 'motives . . . [are clearly] to attack . . . [Marfork] for what it stands for." *Zimmerman*, 25 F. 3d at 798. *Central Valley Chrysler Valley Jeep, Inc. v. Witherspoon*, No. CV-F-04-6663 REC LJO, 2006 WL 1883363, at *8 (E.D. Cal. July 7, 2006) (denying motion to compel documents regarding global climate change because "the science of global warming is not an issue" in the case); *U.S. v. DeChristopher*, No. 2:09-CR-183, 2009 WL 3837208 (D. Utah Nov. 16, 2009) (necessity defense was unavailable to a defendant interfering with oil drilling leases to prevent the exacerbation of global warming and climate change because the defendant failed to prove that the harm he sought to prevent was a concrete harm as opposed to theoretical future harm).  A protective order should be granted shielding Marfork from having to respond to interrogatory numbers 1, 3-6, 8, 13 and request for production numbers 13-17 contained in Defendants' Second Set of Discovery served by Defendant Kolins.

**3.      Interrogatory numbers 5, 7, 8, 10 and request for production numbers 5, 7, 8, 10 served by Schewel relate to the irrelevant First Amendment defense.**

The First Amendment has never been so recklessly broadened to allow individuals to trespass on private property, without responsibility or accountability, to "express themselves." Yet, interrogatory numbers 5, 7, 8, 10 and request for production numbers 5, 7, 8, 10 contained in Defendants' Second Set of Discovery served by Defendant Schewel all relate to Defendants' inapplicable and improperly asserted First Amendment defense.  Protection is needed from this Court, as those requests have been propounded only to promote Defendants' personal agendas.

**INTERROGATORY NO. 5:** List and fully describe all evidence and/or proof that Defendants were not engaged in politically expressive conduct when arrested.

**INTERROGATORY NO. 7:** List and fully describe all evidence and/or proof that Defendants were not engaged in or facilitating political speech when they were arrested.

**INTERROGATORY NO. 8:** List and fully describe all evidence and/or proof that Plaintiff(s) did not bring this action in order to prevent Defendants and others from engaging in politically expressive conduct against Plaintiff and their practice of Mountaintop Removal.

**INTERROGATORY NO. 10:** List and fully describe all evidence and/or proof that none of the activity that Defendants were engaged in when arrested was protected in any way by the First Amendment.

**REQUEST NO. 5:** Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 5 above.

**REQUEST NO. 7:** Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 7 above.

**REQUEST NO. 8:** Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 8 above.

**REQUEST NO. 10:** Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 10 above.

(Ex. A).

Defendants want this Court to manufacture a rule where "protesters," like they claim they are, can intentionally trespass on private property and purposely disrupt the operation of a business under the guise of the First Amendment. They attempt to label their actions as "civil disobedience."

The "constitutionally protected right to associate for expressive purposes exists [only] if the activity for which persons are associating is itself protected by the First Amendment." *Willis v. Town of Marshall*, 426 F.3d 251, 258 (4th Cir. 2005). Here, there was nothing peaceful or civil about Defendants' trespass—they and their co-conspirators knowingly participated in tortious misconduct directed at Marfork. It is this lawless conduct of Defendants that is at issue in the Verified Complaint—not their message. These actions, all on private property, go far

beyond mere speech and association and are not entitled to First Amendment protection.  *See, e.g., Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 297 (1961); *Greer v. Spock*, 424 U.S. 828, 836 (1976).  Indeed, the "[Supreme] Court  has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only."  *Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972). Further, "[t]he freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights."  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994).

Trespass on private property and conspiracy to trespass are NOT protected by the First Amendment.  *Tanner*, 407 U.S. 551; *Madsen*, 512 U.S. at 776.  Correspondingly, Defendants' conduct is not excused by the law.  They stand responsible for their unlawful conduct.  Thus, interrogatory numbers 5, 7, 8, 10 and request for production numbers 5, 7, 8, 10 contained in Defendants' Second Set of Discovery served by Defendant Schewel have no bearing on any issues in this case, and an appropriate protective order should be entered.

### 4. Interrogatory number 6 and request for production number 6 served by Schewel relate to Defendants' irrelevant *Noerr-Pennington* defense.

Interrogatory number 6 and request for production number 6 also are objectionable as they only seek to harass Marfork by requesting information and documents regarding Defendants' *Noerr-Pennington* defense, which is not relevant (legally or factually) to Marfork's trespass and conspiracy claims.

**INTERROGATORY NO. 6:** List and fully describe all evidence and/or proof that Defendants were not engaged in conduct intended to influence government policy and regulations concerning Mountaintop Removal when they were arrested.

**REQUEST NO. 6:** Please produce copies of all writings, documents, recordings, etc. that relate in any way to your ANSWER to Interrogatory No. 6 above.

(Ex. A).

*Noerr-Pennington* does not apply here because Defendants were trespassing on private property and they were not "petitioning the government." "[T]here must be some sort of ***valid*** 'petitioning activity'" for the *Noerr-Pennington* Doctrine to apply. *Municipal Revenue Service, Inc. v. Xspand, Inc.*, 700 F. Supp. 2d 692, 698-99 (M.D. Pa. 2010). And, what Defendants fail to realize is that First Amendment protections do not extend to Marfork's ***private*** property. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 82 (1980) ("one of the essential sticks in the bundle of property rights is the right to exclude others"). In fact, the Supreme "Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used non-discriminatorily for private purposes only." *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 567-68 (1972). Once Defendants crossed onto Marfork's property, the First Amendment protection deserted them.

Nor can Defendants argue that the "right to petition the government" holds a special place under First Amendment law. The Petition Clause is on par with the freedoms to speak, publish, and assemble, *McDonald v. Smith*, 472 U.S. 479, 484-85 (1985), and, thus, "the protection afforded by *Noerr-Pennington* is no more absolute or extensive than that provided by other First Amendment guarantees." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 330 (3d Cir. 1999). In other words, "the concept of 'petitioning activity' as it relates to *Noerr-Pennington* cannot be given a meaning that would provide more extensive protection to petitioning activity than would the First Amendment." *Xspand,* 700 F. Supp. 2d at 698-99. As with their rights of speech and association, Defendants may have a right to petition the government, but that right does not extend to Marfork's private property. Thus, a protective order should be entered shielding Marfork from having to respond to interrogatory number 6 and request for production number 6 contained in Defendants' Second Set of Discovery served by Defendant Schewel.

### III.  CONCLUSION

If one thing (besides the fact that this case was improperly removed to begin with) can be discerned from Defendants' discovery requests, they do not plan to try the trespass and conspiracy claims raised in the Verified Complaint.  This Court already has been down this road. There is very little necessary for this case to be tried, and, of course, nothing raised by Defendants' imagined "affirmative defenses" will ever see the light of day.  There is no good faith basis upon which Defendants can attempt to defend their unlawful conduct.

Based on the foregoing, Marfork respectfully requests that this Court enter a protective order relieving it of the obligation to provide responses to Defendants' Second Sets of Discovery and awarding it reasonable attorneys' fees and expenses, and such other relief as this Court deems just and proper.

**MARFORK COAL COMPANY, INC.**

**By Spilman Thomas & Battle, PLLC**

 /s/ Patrick R. Barry
Samuel M. Brock III (WV Bar No. 9216)
Patrick R. Barry (WV Bar No. 11064)
Keith D. Fisher (WV Bar No. 11346)
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800; Fax: 304.340.3801
sbrock@spilmanlaw.com
pbarry@spilmanlaw.com
kfisher@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**MARFORK COAL COMPANY, INC.,**

     **Plaintiff,**

v.                                  **Civil Action No.: 5:11-0677**

**CATHERINE ANN MACDOUGAL,** *et al.*

**Defendants.**

## CERTIFICATE OF SERVICE

     I, Patrick R. Barry, counsel for plaintiff Marfork Coal Company, Inc., hereby certify that on March 5, 2012, I electronically filed the foregoing "**Plaintiff Marfork Coal Company, Inc.'s Memorandum of Law in Support of Its Motion For Protective Order**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Terry J. Lodge
316 N Michigan St, Suite 520
Toledo, OH 43604
tjlodge50@yahoo.com

Carter P. Lloyd
P.O. Box 26
Berryville, VA 22611
cplloyd@visuallink.com

Lawrence A. Hildes
P.O. Box 5405
Bellingham, WA 98227
lhildes@earthlink.net

                      /s/ Patrick R. Barry
                      Patrick R. Barry (WV Bar No. 11064)