IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MARFORK COAL COMPANY, INC.,**
a West Virginia corporation,

    **Plaintiff,**

v.                                                   **CIVIL ACTION NO. 5:11-cv-00677**

**CATHERINE ANN MACDOUGAL,
REBECCA KOLINS, ELIAS SCHEWEL,
AND JUNIOR WALK,**

    **Defendants.**

## STIPULATED ORDER GRANTING PERMANENT INJUNCTION

On June 11, 2012, Plaintiff Marfork Coal Company, Inc. ("Marfork"), by counsel, and Defendants Catherine Ann MacDougal, Rebecca Kolins, Elias Schewel, and Junior Walk ("Defendants"), by counsel, advised the Court that the parties had reached a resolution of this case through the agreement embodied in this Stipulated Order Granting Permanent Injunction and jointly moved the Court for entry of this Order. And the Court, having considered the Verified Complaint filed in this matter and the stipulations made by the parties in this Order, hereby finds and adjudicates that Marfork is entitled to a permanent injunction and other relief as set forth herein.

Upon the stipulated facts presented by the parties, the Court makes the following findings:

    1.    The Beetree Surface Mine is located in Raleigh County, West Virginia.

2. Marfork possesses certain legal interests in the surface rights of the Beetree Surface Mine property, including the rights of possession and use of the property and the right to mine thereunder.

3. Marfork is a direct or indirect subsidiary or affiliate of Appalachia Holding Company ("Appalachia Holding"), which is affiliated with and a subsidiary of Alpha Appalachia Holdings, Inc. ("Alpha Appalachia"). On June 1, 2011, a subsidiary of Alpha Natural Resources, Inc. ("Alpha Natural Resources"), the direct or indirect parent company of Alpha Appalachia and Appalachia Holding, acquired the stock of Massey Energy Company, and what was formerly known as Massey Energy Company became known as Alpha Appalachia, and what was formerly known as A.T. Massey Coal Company, Inc. became known as Appalachia Holding. Where appropriate, Appalachia Holding, Alpha Appalachia, and Alpha Natural Resources shall hereafter be collectively referred to as "the Alpha entities."

4. On July 20, 2011, Defendants unlawfully trespassed on the Beetree Surface Mine property and thereby knowingly, intentionally, and unlawfully interfered with mining operations being conducted thereon, by, among other things:

  (a) entering the Beetree Surface Mine property without consent or permission;

  (b) trespassing on the Beetree Surface Mine property on and around areas where Marfork was engaged in the production of coal;

  (c) continuing to trespass on the Beetree Surface Mine property after having been asked to leave the property by representatives of Marfork; and

  (d) as to two of the Defendants, MacDougal and Kolins, climbing into and occupying trees on the Beetree Surface Mine property and refusing to leave the property.

5. On July 20, 2011, wherein Defendants knowingly, intentionally, and unlawfully entered the Beetree Surface Mine property without consent or permission, despite requests by Marfork's employees that said Defendants (a) cease and desist their unlawful conduct and (b) leave the property, Defendants refused to leave. Defendants MacDougal and Kolins, instead, continued to occupy trees on Marfork's property. Defendants Schewel and Walk, who had been on the ground under the trees occupied by MacDougal and Kolins, left the site of the treesit and walked onto an active mining area, where they later were arrested by the West Virginia State Police. Defendant Kolins continued her trespass until August 2, 2011, at which point she came down from her tree and then was arrested by the West Virginia State Police. Defendant MacDougal continued her trespass until August 18, 2011, at which point she came down from her tree and then was arrested by the West Virginia State Police.

6. On July 20, 2011, all four Defendants entered upon Marfork's Beetree Surface Mine Property without consent or permission, and one of them remained on the property until August 2, 2011 and another remained on the property until August 18, 2011. Accordingly, Defendants trespassed on Marfork's Beetree Surface Mine property. Further, Defendants acted in concert and conspired to trespass on Marfork's Beetree Surface Mine property and to interfere with Marfork's mining operations.

7. As a direct and proximate result of Defendants' unlawful conduct, Marfork has suffered quantifiable economic damages, the amount of which is subject to dispute between the parties, non-quantifiable economic damages, and additional irreparable harm beyond the economic damages that cannot be quantified with the requisite legal precision. Because of such irreparable harm, Marfork seeks permanent injunctive relief against Defendants and their officers, agents, servants, employees, and attorneys, and those other persons in active concert or

3

participation with Defendants (or their officers, agents, servants, employees, or attorneys) to prevent and avoid further trespassing and interference with its properties and any of the properties of the Alpha entities and any of their respective various direct or indirect subsidiaries or affiliates.

8. "[T]o obtain a permanent injunction in any type of case, . . . '[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" Christopher Phelps & Associates, LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (quoting eBay, Inc. v. MercExchange, LLC, 126 S. Ct. 1837, 1839 (2006)). Marfork has established the four elements necessary for permanent injunctive relief in the instant case.

9. First, Marfork has suffered an irreparable injury as a result of Defendants' actions. With respect to real property, "irreparable injury" is that "which 'is not susceptible of remediable damages,'" Wiles v. Wiles, 58 S.E.2d 601, 606 (W. Va. 1950) (quoting Mullens Realty and Ins. Co. v. Klein, 102 S.E. 677, 679 (W. Va. 1920)), or "which is 'incapable of measurement by any ordinarily accurate standard,'" id. (quoting Kramer v. Slattery, 103 A. 610, 612 (Pa. 1918)). Here, certain of Marfork's damages are not susceptible to calculation, including, but not limited to, the interference with its right to exclusive use and possession of the Beetree Surface Mine and the potential danger that its employees and contract personnel were subjected to during Defendants' trespass, and would be subjected to in the event of another trespass.

10. Second, Marfork has no adequate remedy at law under the circumstances of the instant case. Money damages likely would not compensate Marfork for its quantifiable

4

economic damages because Defendants may well be insolvent, and the remainder of Marfork's economic damages is incalculable. Furthermore, remedies at law are not adequate here because of a continuing threat to trespass on Marfork's Beetree Surface Mine, and on the properties of the Alpha entities and their various direct or indirect subsidiaries or affiliates. As explained by the Fourth Circuit in Swan Island Club, Inc. v. Ansell:

> [I]t is thoroughly well established that equity does have jurisdiction to restrain repeated and continuing trespasses. . . . An action for damages is . . . an ineffectual remedy against continuing trespasses, and where one or more persons continually violate or threaten to violate the owner's rights there is such a failure of remedy at law that the equitable jurisdiction of the court may be invoked, and further trespassing enjoined. . . . An injunction will not necessarily be denied because the trespasser is solvent and able to pay any damage which may be recovered against him for his trespass. . . . The prevention of a multiplicity of trespass actions also forms sufficient ground for equitable relief.

51 F.2d 337, 339-40 (4th Cir. 1931); see also Lucy Webb Hayes Natl. Training School for Deaconesses and Missionaries v. Geoghegan, 281 F. Supp. 116, 117 (D.D.C. 1967) ("[E]quity will enjoin a continuing trespass or a series of repeated trespasses where an action for damages would not be an adequate remedy."); Wiles v. Wiles, 58 S.E.2d 601, 607 (W. Va. 1950).

11. Third, the equities of the instant case tip heavily in favor of Marfork. When "balancing the hardships," Defendants will suffer no harm if permanent injunctive relief is granted: they have no recognized legal right to enter or legal interest in entering onto Marfork's properties or the properties of the Alpha entities and their various direct or indirect subsidiaries or affiliates, and they (and their "agents") will simply be prevented from committing further unlawful trespasses in the future. On the other hand, if such relief is not granted, Marfork and the Alpha entities and their various direct or indirect subsidiaries or affiliates (and their successors and assigns as set forth below) would be harmed because their legal rights to

exclusive possession of land would be under constant attack from continued trespasses and employees and contractors would have to constantly fear and protect against such trespasses.

12. Lastly, the public interest would be served, not disserved, by a permanent injunction. The safety of employees and contract personnel is at stake here and with respect to future threatened trespasses. Without permanent injunctive relief, employees and contract personnel will be distracted from their job duties by the possibility of random acts of trespassers in random areas on the properties, creating operational safety problems. Thus, all four elements necessary for the granting of permanent injunctive relief have been met.

13. The actions of Defendants and other persons were targeted at Marfork, at least in part, because it was a direct or indirect subsidiary or affiliate of the Alpha entities, and, accordingly, their actions were directed to and caused irreparable harm to the Alpha entities. The broad interests and rights of the Alpha entities and their various direct or indirect subsidiaries and affiliates (and their successors and assigns as set forth below) must be protected from irreparable harm attendant to future trespasses, in the same way that Marfork's interests and rights must be protected from this same irreparable harm.

14. To protect against future trespasses on its property and the properties of the Alpha entities and their various direct or indirect subsidiaries or affiliates (and their successors and assigns as set forth below), Marfork is willing to agree, and hereby agrees, to forego a recovery of its quantifiable economic damages caused by Defendants' unlawful trespass and other actions of July 20, 2011 to August 18, 2011, and to forego any claims against Defendants for punitive damages herein, in exchange for the agreement of each of the Defendants, which is hereby given, to (a) comply with the terms of this Permanent Injunction, including but not limited to refraining from future trespasses on Marfork's properties, including but not limited to the Beetree Surface

Mine, and the properties of the Alpha entities and their various direct or indirect subsidiaries or affiliates (and their successors and assigns as more fully set forth below), and (b), in the event that any individual defendant ever violates the terms of this Permanent Injunction and is found by this Court to be in contempt, to pay to any entity protected by this Permanent Injunction whose rights and interests are harmed by any such violation any amount of compensatory damages, civil penalties, and attorneys' fees and expenses this Court might assess against such individual defendant for each such violation and finding of contempt.

15. Each of the Defendants, to avoid joint and several liability to Marfork for its quantifiable economic damages and to further avoid liability for punitive damages to Marfork, is willing to agree, and hereby agrees, to the following:

(a) to comply with the terms of this Permanent Injunction, including but not limited to refraining from future trespasses on Marfork's properties, including but not limited to the Beetree Surface Mine, and the properties of the Alpha entities and their various direct or indirect subsidiaries or affiliates (and their successors and assigns as more fully set forth below); and

(b) in the event that any individual defendant ever violates the terms of this Permanent Injunction and is found by this Court to be in contempt, to pay to any entity protected by this Permanent Injunction whose rights and interests are harmed by any such violation any amount of compensatory damages, civil penalties, and attorneys' fees and expenses this Court might assess against such individual defendant for each such violation and finding of contempt.

16. In further stipulation,

(a) Marfork, as well as the Alpha entities and all of their various direct and indirect subsidiaries and affiliates, release and discharge Defendants and their attorneys,

representatives, assigns, heirs, executors, administrators, beneficiaries, devisees, and legatees ("Defendant Released Parties") of and from any and all past and present claims, demands, causes of action, or liability of any kind or nature arising out of, resulting from, or in any way related to the trespass and other actions of July 20, 2011 to August 18, 2011 and/or this litigation;

      (b)    Defendants, on behalf of themselves and their masters, principals, insurers, agents, attorneys, representatives, assigns, heirs, executors, administrators, beneficiaries, devisees, and legatees, release and discharge Marfork, the Alpha entities and all of their various direct and indirect subsidiaries and affiliates, and each and all of their past, present, and future owners, shareholders, officers, partners, members, agents, attorneys, employees, directors, insurers, reinsurers, representatives, administrators, predecessors, and successors and assigns of any rights or interests of any of the foregoing entities and persons ("Marfork Released Parties") of and from any and all past and present claims, demands, causes of action, or liability of any kind or nature arising out of, resulting from, or in any way related to the trespass and other actions of July 20, 2011 to August 18, 2011 and/or this litigation; and

      (c)    The parties hereto are to bear their own attorneys' fees, expenses, and costs of this litigation.

17.    Counsel for Defendants have represented to this Court that each of the Defendants agrees to all of the terms contained in this Stipulated Order Granting Permanent Injunction. Counsel for Defendants also have represented to this Court that each of the Defendants fully understands the import of this Permanent Injunction and that each of the Defendants understands and acknowledges that, in the event of a violation of any of the terms of this Permanent Injunction and this Court finds a defendant to be in contempt, this Court shall order him or her to pay to any entity protected by this Permanent Injunction whose rights or interests are harmed by

any such violation any amount of compensatory damages, civil penalties, and attorneys' fees and expenses the Court might assess for each such violation and finding of contempt.

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

Defendants, and their officers, agents, servants, employees, and attorneys, and those other persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees, or attorneys) who receive actual notice of this Permanent Injunction by personal service or otherwise, are hereby forever restrained and enjoined from doing, or causing to be done, the following:

(a) Trespassing or otherwise congregating on any of the properties of Marfork, of the Alpha entities and any of their respective various direct or indirect subsidiaries or affiliates, and of any successors or assigns of any rights or interests of Marfork and the Alpha entities and any of their respective various direct or indirect subsidiaries and affiliates; and

(b) Interfering, obstructing, blocking, impeding, or tampering with any coal operating equipment, trucks, or other vehicles of Marfork, of the Alpha entities and any of their respective various direct or indirect subsidiaries or affiliates, and of any successors or assigns to any rights or interests of Marfork and the Alpha entities and any of their respective various direct or indirect subsidiaries and affiliates.

It is further **ORDERED** that the posting of this Order in conspicuous places at or about the entrances to the subject properties and/or on the roads leading to said properties shall be *prima facie* evidence of due notice to Defendants, and to their officers, agents, servants, employees, and attorneys, and to those other persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees, or attorneys), of the applicability of this Order to those properties.

It is further **ORDERED** that, upon a finding of contempt for a future violation of this Permanent Injunction by any of the above-named Defendants, or by their officers, agents, servants, employees, or attorneys, or by those other persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees, or attorneys) who receive actual notice of this Permanent Injunction by personal service or otherwise, such Defendant and/or contemnor may be liable for compensatory damages, civil penalties, and attorneys' fees and expenses for each violation of this Order, to be determined by this Court, payable to Marfork or its respective direct or indirect subsidiary or affiliate, the appropriate Alpha entity, or any successors or assigns of any rights or interests of Marfork and the Alpha entities and any of their respective various direct or indirect subsidiaries and affiliates.

This Permanent Injunction and all of its terms and provisions shall be binding upon, and shall inure to the benefit of, all parties, as well as the Alpha entities and their respective various direct or indirect subsidiaries or affiliates, and any successors and assigns to any rights or interests of Marfork and the Alpha entities and their respective various direct or indirect subsidiaries or affiliates.

This Permanent Injunction shall take effect immediately.

Issued this <u>13</u> day of <u>June</u>, 2012 at <u>1:00</u> p.m.

The Clerk is instructed to send a certified copy of this Order to all counsel of record.

**ENTERED:**

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10

AGREED TO AND PRESENTED JOINTLY BY:

*/s/ Samuel M. Brock III*

Samuel M. Brock III (WV Bar No. 9216)
~~Patrick R. Barry (WV Bar No. 11064)~~
Keith D. Fisher (WV Bar No. 11346)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800/Fax: 304.340.3801
sbrock@spilmanlaw.com
~~pbarry@spilmanlaw.com~~
kfisher@spilmanlaw.com

*Counsel for Plaintiff Marfork Coal Company, Inc.*

And

*/s/ Lawrence A. Hildes*

Lawrence A. Hildes (admitted *pro hac vice*)
P.O. Box 5405
Bellingham, WA 98227
lhildes@earthlink.net

Terry J. Lodge (admitted *pro hac vice*)
316 N. Michigan Street, Suite 520
Toledo, OH 43604-5627
tjlodge50@yahoo.com

Carter P. Lloyd (WV Bar No. 11472)
P.O. Box 26
Berryville, VA 22611
cplloyd@visuallink.com

*Counsel for Defendants*